1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

11 | ERIC JEROME PHILLIPS, JR.,
12 | Plaintiff,
13 | v.
14 | COUNTY OF RIVERSIDE et al.,
15 |
16 | Defendants.
17

Case No. 5:20-cv-0266-VAP (MAA)

**MEMORANDUM DECISION AND ORDER REGARDING FIRST AMENDED COMPLAINT**

18   **I.   INTRODUCTION**

19        On June 24, 2020, Plaintiff Eric Jerome Phillips, Jr. ("Plaintiff"), a pretrial

20   detainee proceeding *pro se*, filed a Complaint alleging violations of his civil rights

21   pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  That same

22   day, Plaintiff also filed a Request to Proceed *In Forma Pauperis* (ECF No. 2), which

23   the Court granted on June 26, 2020 (ECF No. 4).  On July 31, 2020, the Court

24   screened and dismissed the Complaint with leave to amend ("Order Dismissing

25   Complaint").  (Order Dismiss. Compl., ECF No. 8.)  On September 3, 2020, the

26   Court received Plaintiff's First Amended Complaint ("FAC").  (FAC, ECF No. 9.)

27        The Court has screened the FAC as prescribed by 28 U.S.C. § 1915A and

28   § 1915(e)(2)(B).  For the reasons stated below, the FAC is **DISMISSED WITH**

**LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Second Amended Complaint ("SAC"); or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a SAC.

## II.    SUMMARY OF ALLEGATIONS AND CLAIMS[1]

### A.    Defendants

The FAC is filed against:  (1) County of Riverside, official capacity; (2) Riverside County Sheriff's Department ("RCSD"), official capacity; (3) Edward Delgado, Captain at CBDC Jail,[2] individual capacity; (4) Sergeant Paschal, Classification Sergeant at CBDC Jail, individual capacity; (5) Sergeant Nariso, Transportation Sergeant at CBDC Jail, individual capacity; and (6) Sergeant Hill, Classification Sergeant at RPDC Jail,[3] individual capacity (each, a "Defendant," and collectively, "Defendants").  (FAC 4–5.)[4]  Defendants County of Riverside and RCSD together are referred to as "County Defendants."  Defendants Delgado, Paschal, Nariso, and Hill collectively are referred to as "Individual Defendants."

### B.    Claim 1: First Amendment Right to Confidential Communications and Freedom of Speech – County Defendants

County Defendants have a custom in place where confidential and legal mail of detainees in custody is read by deputies outside the presence of detainees if "legal

---

[1] The Court summarizes the allegations and claims in the FAC.  In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

[2] Presumably, this refers to Cois M. Byrd Detention Center.

[3] Presumably, this refers to Robert Presley Detention Center.

[4] Citations to pages in docketed documents reference those generated by CM/ECF.

mail" is not on the envelope. (*Id*. at 6–7.)  From approximately November 10, 2017 to August 20, 2020, Plaintiff has had his legal and confidential mail from courts, government entities, and government individuals opened and read by deputies outside his presence on approximately sixty occasions. (*Id*. at 7.)  Plaintiff asked deputies to stop reading his confidential-marked mail outside his presence, and this request was denied on multiple occasions. (*Id*.)  Multiple deputies have informed Plaintiff that his legal mail will be read outside of his presence. (*Id*. at 8.)

### C.   Claim 2: Fourteenth Amendment Substantive Due Process Rights – County Defendants

County Defendants have a practice and policy where Deputies assign six gang members—two for each of the three races ("black/white/Hispanic")—to act as "MAC reps," or overseers for all detainees of their races. (*Id*. at 9.)  Deputies give MAC reps police power:  (1) to enforce punishment and discipline on any detainee who is not complying with the MAC rep system and rules of the jail; and (2) power to control when detainees may shower, eat, access a phone, and access the law library. (*Id*. at 9–10.)  Deputies hold MAC reps accountable for detainees' well-being and safety. (*Id*. at 10.)  Deputies punish and threaten to punish all detainees for disobeying an order of a MAC rep by placing detainees on lockdowns, denying access to a phone, denying access to the library, filing unwarranted disciplinary reports, and other forms of punishment. (*Id*.)  Deputies spread false rumors amongst MAC reps and detainees of different races to start racial hostility. (*Id*. at 11.)

Plaintiff is a black detainee forced to be housed in a cell with another black detainee. (*Id*.)  Under the MAC rep system, Plaintiff was forced out of his cell by MAC reps on a daily basis by physical intimidation and threats. (*Id*. at 12.)  MAC reps controlled when Plaintiff could shower, sleep, and eat, and deprived Plaintiff of sleep with death threats. (*Id*.)  The MAC reps controlled when Plaintiff could access a phone, law library, or send out mail, with the use of verbal and physical threats,

causing Plaintiff to be denied access to a phone up to approximately three weeks at a time. (*Id*. at 12–13.) The MAC reps would extort Plaintiff into giving up information about his life and would make death threats against Plaintiff's family if he did not comply with their orders or Defendant RCSD's rules. (*Id*. at 13.) On two occasions Plaintiff was forced—through the use of death threats—to participate in a "roll out" by Defendants and detainees. (*Id*.) During a roll out, two to nine detainees are chosen by MAC reps to punish a detainee by attacking the detainee "until satisfied," then having the detainee moved to another jail or housing unit. (*Id*.) The MAC reps prevented Plaintiff from conducting his criminal case defense when he was pro per by forcing Plaintiff out of his cell and to stop working by use of death threats. (*Id*. at 14.) Plaintiff was forced to hide weapons, drugs, alcohol in his cell by MAC reps, and would face death threats to make him comply. (*Id*.) The MAC reps threatened to kill Plaintiff and place a "hit" on his family if he did not comply. (*Id*.) Deputies would punish MAC reps and Plaintiff if MAC reps failed to control detainees in housing units, by denying access to a phone, law library, and showers, and instituting lockdowns. (*Id*.) Deputies executed deadly force on Plaintiff, forced him to strip naked, and sexually humiliated him on two occasions for refusing to comply with the MAC rep system. (*Id*. at 15.) Plaintiff has requested to be housed in RCSD Jail's safest housing ad seg due to his safety and life being in danger, but this request was denied multiple times by deputies. (*Id*.)

### D.     Claim 3: First Amendment Retaliation – Individual Defendants

#### 1.     Retaliation Act One

While Plaintiff was housed at CBDC Jail from approximately January 26, 2017 to January 15, 2019, Plaintiff submitted multiple grievances addressing his rights to exercise his religion and housing conditions. (*Id*. at 16–17.)

On August 14, 2018, in response to Plaintiff's submission of a grievance concerning his access to courts and living conditions, Defendant Paschal told

Plaintiff to "stop putting in grievances" or he would "make sure you suffer more," and intimated that he would "end" Plaintiff's life. (*Id*. at 17.)  On August 28, 2018, in response to Plaintiff's submission of a grievance concerning his living conditions, Defendant Paschal told Plaintiff that he was "tired" of Plaintiff and his grievances, and because Plaintiff kept complaining, he was going to make sure Plaintiff did not get access to the law library. (*Id*.)  Defendant Paschal also told Plaintiff that Defendant Delgado wanted Plaintiff to know that he would be throwing his grievances in the trash and taking away Plaintiff's ability to submit grievances. (*Id*. at 18.)  Defendant Paschal continued to harass and subsequently threatened Plaintiff's life on two occasions. (*Id*.)

On September 1, 2018, Defendant Delgado instructed all subordinates at CBDC Jail to not respond to Plaintiff's grievances and suspended Plaintiff's rights to submit grievances. (*Id*.)  On approximately September 1, 2018, Defendant Delgado sent Plaintiff a memorandum stating that Plaintiff is prohibited from submitting further grievances, and his grievances will be overlooked if submitted. (*Id*.)  From approximately September 1, 2018 to January 15, 2019, Defendant Delgado had his subordinates at CBDC Jail deny Plaintiff access to the law library and phone. (*Id*. at 18–19.)  Plaintiff submitted multiple grievances and inmate request slips to Defendant Delgado regarding the deputies' denial of such access. (*Id*. at 19.) Defendant Delgado refused to respond to Plaintiff's grievances or conduct any further investigation, all in retaliation for Plaintiff's submission of grievances. (*Id*.)

Defendants Paschal and Delgado conspired to silence Plaintiff from exercising his First Amendment rights. (*Id*.)  Such acts were unnecessary to the maintenance of order at the jail and caused Plaintiff to sustain ongoing psychological injuries and subjected him to physical harm. (*Id*. at 20.)

///

///

///

5

1          2.      Retaliation Act Two

2          While Plaintiff was acting in pro per for his criminal case from November 26,

3    2017 to April 2, 2019, on two separate occasions Defendants Hill and Narciso

4    confiscated and threw away Plaintiff's criminal case documents in retaliation for

5    Plaintiff exercising his rights to represent himself in a criminal case.  (*Id*. at 20.)

6    Defendants Hill and Narciso conspired to have Plaintiff die in custody and prevent

7    him from earning his freedom by conducting his criminal defense.  (*Id*. at 24.)

8          On August 26, 2018, at CBDC Jail Defendant Narciso confiscated and threw

9    away multiple legal documents concerning Plaintiff's criminal case.  (*Id*. at 20.)

10   Defendant Narciso verbally harassed and threatened Plaintiff's life after he

11   confiscated Plaintiff's property.  (*Id*.)  Defendant Narciso told Plaintiff that if

12   Plaintiff wanted to represent himself, then he would punish him, but that if Plaintiff

13   stopped representing himself, then he would "take it easy" on him.  (*Id*. at 21.)

14   Defendant Narciso's actions silenced Plaintiff from filing petitions.  (*Id*. at 22.)

15         On approximately February 1, 2019, Defendant Hill confiscated and threw

16   away multiple legal materials and documents, threatening Plaintiff's life and

17   verbally harassing him.  (*Id*.)  Defendant Hill told Plaintiff that as long as he is at the

18   jail, representing himself, he would do whatever he could to make sure he died in

19   prison and next time he should get an attorney.  (*Id*.)  Defendant Hill stated to his

20   two subordinates who assisted him with the confiscation to make sure they throw

21   away all his stuff and he would make sure Plaintiff died in prison, as he did not

22   deserve to live.  (*Id*. at 23.)  Defendant Hill continued to verbally harass and threaten

23   Plaintiff, and confiscated his legal property again on another occasion.  (*Id*.)

24

25   **E.     Remedies Sought**

26         For the foregoing violations, the FAC seeks declaratory and injunctive relief;

27   compensatory, punitive, and nominal damages; a jury trial; and any further relief to

28   meet the ends of justice.  (*Id*. at 25.)

1  ### III.  STANDARD OF REVIEW

2       Federal courts must conduct a preliminary screening of any case in which a

3  prisoner seeks redress from a governmental entity or officer or employee of a

4  governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma*

5  *pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable

6  claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or

7  malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks

8  monetary relief from a defendant who is immune from such relief.  28 U.S.C.

9  §§ 1915(e)(2)(B), 1915A(b).

10       When screening a complaint to determine whether it fails to state a claim upon

11  which relief can be granted, courts apply the Federal Rule of Civil Procedure

12  12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121

13  (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A);

14  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6)

15  standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a

16  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

17  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

19  plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

21  Although "detailed factual allegations" are not required, "an unadorned, the-

22  defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked

23  assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the

24  elements of a cause of action, supported by mere conclusory statements" are

25  insufficient to defeat a motion to dismiss.  *Id.* (quotations omitted).  "Dismissal

26  under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

27  theory or sufficient facts to support a cognizable legal theory."  *Hartmann v.  Cal.*

28  ///

7

*Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV.   DISCUSSION

### A.   Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally

1   guaranteed rights and to provide relief to victims if such deterrence fails." *Id*.  To

2   state a claim under Section 1983, a plaintiff must allege:  (1) a right secured by the

3   Constitution or laws of the United States was violated; and (2) the alleged violation

4   was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

5   42, 48 (1988).

6       Here, the FAC asserts violations of the following rights:  First Amendment

7   protection of legal mail, Fourteenth Amendment substantive due process protection

8   against punishment of pretrial detainees, and First Amendment retaliation.  (FAC 9.)

9   Mindful of the liberal pleading standards afforded *pro se* civil rights plaintiffs, the

10  Court also examines Claim 3 in light of the First and Fourteenth Amendment rights

11  to access courts and the Sixth and Fourteenth Amendment rights to self-

12  representation.  *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific

13  legal theories need not be pleaded so long as sufficient factual averments show that

14  the claimant may be entitled to some relief."); *Ellis v. Brady*, Case No. 16cv1419

15  WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017)

16  (concluding that court could address plaintiff's claim asserted under the wrong

17  constitutional amendment, as "it is the factual allegations, not the legal labels

18  attached, which determine the issue").

19

20       **B.    First Amendment Protection of Legal Mail**

21       Inmates have "a First Amendment right to send and receive mail."  *Witherow

22  v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  "However, a prison may

23  adopt regulations which impinge on an inmate's constitutional rights if those

24  regulations are 'reasonably related to legitimate penological interests.'"  *Id*. (quoting

25  *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  In assessing the constitutionality of prison

26  regulations that affect inmates' constitutional rights, courts consider the following

27  factors:

28  ///

(1) whether there is a valid, rational connection between the prison
regulation and the legitimate governmental interest put forward to
justify it; (2) whether there are alternative means of exercising the
right that remain open to prison inmates; (3) what impact
accommodation of the asserted constitutional right will have on
guards and other inmates, and on the allocation of prison resources
generally; and (4) whether there is an absence of ready alternatives.

*Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (internal quotation marks
omitted) (quoting Turner, 482 U.S. at 89–91).  Prison officials do not need to show
that there is no less restrictive mail policy that could serve the same penological
interests.  *See Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989); *Witherow*, 52 F.3d at
265.

"[P]risoners have a protected First Amendment interest in having properly
marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849
F.3d 1204, 1211 (9th Cir. 2017).  The Supreme Court has held that legal mail may
be opened in the presence of the prisoner and that prison officials could require both
that the letters be specially marked with the name and address of the attorney and
that the attorney communicate first with prison officials.  *See Wolff v. McDonnell*,
418 U.S. 539, 575–77 (1974); *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir.
1981).  "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not
legal mail," and may be opened outside the prisoner's presence.  *Hayes*, 849 F.3d at
1211 (quoting *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)).  "With minute
and irrelevant exceptions all correspondence from a court to a litigant is a public
document, which prison personnel could if they want inspect in the court's files."
*Keenan*, 83 F.3d at 1094 (quoting *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir.
1987)).  Furthermore, mail from public agencies and public officials may be opened
outside prisoners' presence in light of security concerns.  *Mann v. Adams*, 846 F.2d
589, 590–91 (9th Cir. 1988) (per curiam).

Here, the FAC alleges that County Defendants' custom permits the confidential and legal mail of detainees to be read by deputies outside the presence of detainees if "legal mail" is not on the envelope.  (FAC 6–7.)  The FAC alleges that from approximately November 10, 2017 to August 20, 2020, Plaintiff's legal and confidential mail from courts, government entities, and government individuals was opened and read by deputies outside his presence on approximately sixty occasions.  (*Id*. at 7.)  Plaintiff asked deputies to stop reading his confidential-marked mail outside his presence, but this request was denied numerous times.  (*Id*.)

The FAC does not state a First Amendment claim.  <u>First</u>, the First Amendment only requires that legal mail—as opposed to confidential mail—be opened in an inmate's presence.  *See Hayes*, 849 F.3d at 1211.  Legal mail is mail from a prisoner's attorney, and does not include the mail at issue in the FAC—*i.e.*, mail from the courts, government entities, and government individuals.  (FAC 7.)  *See Hayes*, 849 F.3d at 1211; *Mann*, 846 F.2d 590–91.  <u>Second</u>, the First Amendment protects only "properly marked legal mail."  *Hayes*, 849 F.3d at 1211.  Thus, County Defendants' purported custom of opening any mail not marked "legal mail" does not violate the First Amendment.  *See id*. (affirming dismissal of a First Amendment claim where prisoner did not allege who sent the mail or that it was properly marked as "legal mail").

For these reasons, the FAC fails to state a First Amendment claim for the opening of Plaintiff's incoming mail.  If Plaintiff includes this claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

### C.    Fourteenth Amendment Protection Against Punishment

Pretrial detainees possess greater constitutional rights than prisoners.  *Stone v. City & County of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime,

11

1   while pretrial detainees are entitled to the potentially more expansive protections of

2   the Due Process Clause of the Fourteenth Amendment." ).  The Due Process Clause

3   of the Fourteenth Amendment protects pretrial detainees—who have not been

4   adjudged guilty of any crime—from any conditions or restrictions that amount to

5   punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *see also Valdez v.*

6   *Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) ("Pretrial detainees have

7   a substantive due process right against restrictions that amount to punishment.").

8   "This right is violated if restrictions are 'imposed for the purpose of punishment.'"

9   *Valdez*, 302 F.3d at 1045 (quoting *Bell*, 441 U.S. at 535).

10        For a particular governmental action to constitute punishment, <u>first</u> the "action

11   must cause the detainee to suffer some harm or 'disability.'"  *Demery v. Arpaio*, 378

12   F.3d 1020, 1029 (9th Cir. 2004).  "[T]o constitute punishment, the harm or disability

13   caused by the government's action must either significantly exceed, or be

14   independent of, the inherent discomforts of confinement." *Id.* at 1030.  <u>Second</u>, "the

15   purpose of the governmental action must be to punish the detainee." *Id.* at 1029.  To

16   determine whether a condition is unconstitutional punishment, a court asks "whether

17   there was an express intent to punish, or 'whether an alternative purpose to which

18   [the restriction] may rationally be connected is assignable for it, and whether it

19   appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 1028

20   (alteration in original) (quoting *Bell*, 441 U.S. at 538).  "[I]f a particular condition or

21   restriction of pretrial detention is reasonably related to a legitimate governmental

22   objective, it does not, without more, amount to '"punishment.'"  *Bell*, 441 U.S. at

23   539.  "Conversely, if a restriction or condition is not reasonably related to a

24   legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that

25   the purpose of the governmental action is punishment that may not constitutionally

26   be inflicted upon detainees . . . ." *Id*.  "A reasonable relationship between the

27   governmental interest and the challenged restriction does not require an exact fit, nor

28   ///

12

1    does it require showing a least restrictive alternative." *Valdez*, 302 F.3d at 1046

2    (internal quotation marks and citations omitted).

3         Here, the FAC details the existence of a MAC rep system, the allegations of

4    which are summarized in Section III.C, *supra*.  These allegations fail to allege a

5    Fourteenth Amendment claim against County Defendants because they allege

6    actions of individuals.  However, "[a] municipality cannot be held liable *solely*

7    because it employs a tortfeasor—or in other words, a municipality cannot be held

8    liable under Section 1983 on a *respondeat superior* theory."  *Monell v. Dep't of*

9    *Social Servs.*, 436 U.S. 658, 690–91 (1978); *accord Connick v. Thompson*, 563 U.S.

10   51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their

11   *own* illegal acts.  They are not vicariously liable under § 1983 for their employees'

12   actions." (quotations and citations omitted)).

13        "In order to establish municipal liability, a plaintiff must show that a 'policy

14   or custom' led to the plaintiff's injury."  *Castro v. County of Los Angeles*, 833 F.3d

15   1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694).  "Official

16   municipal policy includes the decisions of a government's lawmakers, the acts of its

17   policymaking officials, and practices so persistent and widespread as to practically

18   have the force of law."  *Connick*, 563 U.S. at 61.  A rule or regulation "promulgated,

19   adopted, or ratified by a local governmental entity's legislative body" constitutes a

20   municipal policy.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir.

21   1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595

22   F.3d 964 (9th Cir. 2010) (en banc).  "A policy has been defined as 'a deliberate

23   choice to follow a course of action . . . made from among various alternatives by the

24   official or officials responsible for establishing final policy with respect to the

25   subject matter in question.'"  *Waggy v. Spokane County Washington*, 594 F.3d 707,

26   713 (9th Cir. 2010) (alteration in original) (quoting *Long v. County of Los Angeles*,

27   442 F.3d 1178, 1185 (9th Cir. 2006)).  "[I]n addition to an official policy, a

28   municipality may be sued for constitutional deprivations visited pursuant to

governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (quotations omitted) (citing *Monell*, 436 U.S. at 690–91). However, liability for a custom will attach only if a plaintiff pleads that his or her injury resulted from a "permanent and well-settled" practice. *Thompson*, 885 F.2d at 1444. Allegations of random acts or isolated events are insufficient to establish a municipal custom. *Navarro*, 72 F.3d at 714.

Here, the FAC does not contain sufficient allegations by which it can be inferred that the actions of the deputies and MAC reps at issue in Claim 2 constitute County Defendants' policy, custom, or practice. The FAC contains no allegations that the MAC rep system was promulgated, adopted, or ratified by County Defendants. In addition, there are insufficient allegations to attribute the purported MAC rep system, particularly the actions of the inmate MAC reps, to a custom of County Defendants. The conclusory statements that something is a "custom" or "practice" is not sufficient to make it so. *See Iqbal*, 556 U.S. at 678. Furthermore, even if the FAC had sufficiently alleged that County Defendants' policy, custom or practice caused Plaintiff's alleged deprivations—which it does not—there are no allegations by which it reasonably could be inferred that the purpose of such purported policy, custom, or practice was to punish Plaintiff. *See Demery*, 378 F.3d at 1029 ("[T]he purpose of the governmental action must be to punish the detainee."); *Bell*, 441 U.S. at 539 ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'").

For these reasons, the FAC does not state a Fourteenth Amendment punishments claim against County Defendants. If Plaintiff asserts a Fourteenth Amendment punishments claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

///

14

1         **D.**    **First Amendment Protection Against Retaliation**

2       "[A] prison inmate retains those First Amendment rights that are not

3 inconsistent with his status as a prisoner or with the legitimate penological

4 objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

5 To state a First Amendment retaliation claim, a prisoner "must allege both that the

6 type of activity he engaged in was protected under the first amendment and that the

7 state impermissibly infringed on his right to engage in the protected activity." *Rizzo*

8 *v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (holding that allegations of retaliation

9 against a prisoner for assisting other inmates with their habeas petitions and pursuing

10 his own legal actions could support a First Amendment retaliation claim); *see also*

11 *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (stating that prisoners have a

12 First Amendment right to file prison grievances, and a First Amendment right to be

13 free from retaliation for doing so). "Within the prison context, a viable claim of

14 First Amendment retaliation entails five basic elements:  (1) An assertion that a state

15 actor took some adverse action against an inmate (2) because of (3) that prisoner's

16 protected conduct, and that such action (4) chilled the inmate's exercise of his First

17 Amendment rights, and (5) the action did not reasonably advance a legitimate

18 correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

19       "[M]ere speculation that defendants acted out of retaliation is not sufficient."

20 *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).  Because direct evidence of

21 retaliatory intent rarely can be pleaded in a complaint, circumstantial evidence—

22 such as suspect timing, inconsistent determinations based on the same evidence, and

23 oral statements—may suffice to infer retaliatory intent.  *See Bruce v. Ylst*, 351 F.3d

24 1283, 1288 (9th Cir. 2003).  A plaintiff bears the initial burden of showing that the

25 exercise of his First Amendment rights was a "substantial" or "motivating" factor

26 behind the defendant's conduct.  *Mt. Healthy City School Dist. v. Doyle*, 429 U.S.

27 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.

28 1989).

1          1.     Defendants Paschal and Delgado

2          The FAC alleges that while Plaintiff was housed at CBDC Jail from

3    approximately January 26, 2017 to January 15, 2019, Plaintiff submitted multiple

4    grievances addressing his rights to exercise his religion and housing conditions.

5    (FAC 16–17.)  On August 14, 2018, in response to Plaintiff's submission of a

6    grievance concerning his access to courts and living conditions, Defendant Paschal

7    told Plaintiff to "stop putting in grievances" or he would "make sure you suffer

8    more," and intimated that he would "end" Plaintiff's life.  (*Id*. at 17.)  On August 28,

9    2018, in response to Plaintiff's submission of a grievance concerning his living

10   conditions, Defendant Paschal told Plaintiff that he was "tired" of Plaintiff and his

11   grievances, and because Plaintiff kept complaining, he was going to make sure

12   Plaintiff did not get access to the law library.  (*Id*.)  On September 1, 2018,

13   Defendant Delgado instructed all subordinates at CBDC Jail to not respond to

14   Plaintiff's grievances, issued a memorandum to Plaintiff suspending Plaintiff's

15   rights to submit grievances, and had his subordinates deny Plaintiff access to the law

16   library and phone.  (*Id*. at 18–19.)

17         At this stage in the litigation, these allegations are sufficient to state a First

18   Amendment retaliation claim against Defendants Paschal and Delgado.  The FAC

19   alleges that: (1) Plaintiff engaged in a protected action by submitting numerous

20   grievances, *see Brodheim*, 584 F.3d at 1269 ("[P]risoners have a First Amendment

21   right to file prison grievances."); (2) Defendant Paschal took adverse action against

22   Plaintiff by threatening to make him suffer and to end his life, and Defendant

23   Delgado suspended Plaintiff's rights to submit further grievances and denied

24   Plaintiff's access to the law library and phone; (3) the FAC sufficiently alleges a

25   casual connection between (1) and (2) through Defendant Paschal's oral statements

26   to Plaintiff and Defendant Delgado's memorandum to Plaintiff, both explicitly

27   connecting their actions to Plaintiff's grievances; (4) it reasonably could be inferred

28   that death threats, suspension of the right to submit grievances, and denial of access

16

to the law library and phone would chill or silence a person of ordinary firmness; and (5) it reasonably could be inferred that such retaliatory actions did not advance legitimate penological goals.

### 2.   Defendants Hill and Narcisco

The FAC alleges that while Plaintiff was acting in pro per for his criminal case from November 26, 2017 to April 2, 2019, on two separate occasions Defendants Hill and Narcisco confiscated and threw away Plaintiff's criminal case documents in retaliation for Plaintiff exercising his rights to represent himself in a criminal case.  (FAC 20.)  On August 26, 2018, at CBDC Jail Defendant Narcisco confiscated and threw away multiple legal documents concerning Plaintiff's criminal case; verbally harassed and threatened Plaintiff's life after he confiscated Plaintiff's property; and told Plaintiff that if Plaintiff wanted to represent himself, then he would punish him, but that if Plaintiff stopped representing himself, then he would "take it easy" on him; and that Defendant Narcisco's actions silenced Plaintiff from filing petitions.  (*Id*. at 20–22.)  On approximately February 1, 2019, Defendant Hill confiscated and threw away multiple legal materials and documents, threatening Plaintiff's life and verbally harassing him; told Plaintiff that as long as he is at the jail, representing himself, he would do whatever he could to make sure he died in prison and next time he should get an attorney.  (*Id*. at 22–23.)

The First Amendment protection against retaliation only protects prisoners in exercising their First Amendment rights.  *See Rizzo*, 778 F.2d at 531.  The right of a criminal defendant to represent himself pro per is protected by the Sixth and Fourteenth Amendments, not the First Amendment.  *See Faretta v. California*, 422 U.S. 806, 834–36 (1975).  Nonetheless, the allegations could be interpreted as Plaintiff's exercise of his First Amendment right to pursue a legal action, and Defendants Hill and Narcisco's purported retaliation against him for doing so.  *See Rizzo*, 778 F.2d at 531 (holding that allegations of retaliation against a prisoner for

pursuing legal actions could support a First Amendment retaliation claim). Thus, the allegations allege that: (1) Plaintiff engaged in a protected action by litigating a case in court; (2) Defendants Hill and Narcisco took adverse actions against Plaintiff by threatening him and confiscating his legal documents; (3) the FAC sufficiently alleges a causal connection between (1) and (2) through Defendants Hill's and Narcisco's oral statements to Plaintiff; (4) it reasonably could be inferred that threats and confiscation of legal documents would chill or silence a person of ordinary firmness; and (5) it reasonably could be inferred that such retaliatory actions did not advance legitimate penological goals. At this stage in the litigation, the FAC sufficiently alleges a First Amendment retaliation claim against Defendants Hill and Narcisco.

### E. First and Fourteenth Amendment Right to Access Courts

"[T]he right of access to the courts is a fundamental right protected by the Constitution." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (alteration in original) (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998)). Prisoners have a constitutional right of access to the courts, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. . . . [I]t is this capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356–57.

To state a claim for denial of access to the courts, a plaintiff must establish that he or she suffered an "actual injury"—that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or

to present a claim." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 348). "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." *Id*. Even if delays in providing legal materials or assistance result in actual injury, they are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362.

Claims for denial of access to courts may arise from either the frustration of "a litigating opportunity yet to be gained" (a forward-looking claim), or from "an opportunity already lost" (a backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). In either case, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id*. at 414–15. "[T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id*. at 415. Thus, a plaintiff must allege: (1) a "nonfrivolous," "arguable" underlying claim, pled "in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued"; (2) the official acts that frustrated the litigation of that underlying claim; and (3) a plain statement describing the "remedy available under the access claim and presently unique to it." *Id*. at 415–18.

The facts supporting the FAC's First Amendment retaliation claim also could be construed as asserting an access-to-courts claim. However, to the extent an access-to-court claim is asserted, it fails because the FAC does not describe the nonfrivolous legal arguments or claims Plaintiff was prevented from bringing as a direct result of Individual Defendants' actions. In order to state an access-to-courts claim, Plaintiff must plead a nonfrivolous, arguable underlying claim, pled in accordance with Rule 8, "just as if it were being independently pursued." *Harbury*, 536 U.S. at 417. A prisoner's right to access courts does not include the right to present frivolous claims. *See Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of an

1   arguable (though not yet established) claim inflicts actual injury because it deprives
2   him of something of value—arguable claims are settled, bought, and sold.
3   Depriving someone of a frivolous claim, on the other hand, deprives him of nothing
4   at all, except perhaps the punishment of Federal Rule of Civil Procedure 11
5   sanctions.").

6       For these reasons, the FAC fails to state a First and Fourteenth Amendment
7   access-to-courts claim.  If Plaintiff asserts this claim in an amended complaint, he
8   must correct these deficiencies or risk its dismissal.

9

10      **F.    Sixth and Fourteenth Amendment Right to Self-Representation**
11      The Sixth and Fourteenth Amendments guarantee a criminal defendant's right
12   to reject court-appointed counsel and to conduct his or her own defense.  *Faretta*,
13   422 U.S. at 834–36.  The right to self-representation is premised upon the right of
14   the defendant to prepare a defense.  *Milton v. Morris*, 767 F.2d 1443, 1445 (9th Cir.
15   1985).  "[T]ime to prepare and some access to materials and witnesses are
16   fundamental to a meaningful right of representation."  *Id*. at 1446.  "An incarcerated
17   defendant may not meaningfully exercise his right to represent himself without
18   access to law books, witnesses, or other tools to prepare a defense."  *Id*. at 1446; *see
19   also Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989).  However, the right to self-
20   representation is "not unlimited," and may be limited due to "security considerations
21   and avoidance of abuse by opportunistic or vacillating defendants."  *Milton*, 767
22   F.2d at 1446.  In addition, to prevail on a self-representation claim, a plaintiff must
23   show "substantial prejudice."  *See Brown v. Trejo*, 818 F. App'x. 599, 602 (9th Cir.
24   2020) (construing *Nordstrom*, 856 F.3d at 1271).
25      Under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), a Section 1983
26   complaint must be dismissed if judgment in favor of the plaintiff would undermine
27   the validity of his conviction or sentence, unless the plaintiff can demonstrate that
28   the conviction or sentence already has been invalidated.  The "sole dispositive

question is whether a plaintiff's claim, if successful, would imply the invalidity of his conviction." *Whitaker v. Garcetti*, 486 F.3d 572, 584 (9th Cir. 2007). "In evaluating whether claims are barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153–54 (9th Cir. 2002) (citing *Heck*, 512 U.S. at 487 n.6). *Heck's* principles apply regardless of the remedy sought. *See Edwards v. Balisock*, 520 U.S. 641, 648 (1997). However, the *Heck* bar applies only "where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

Here, the FAC alleges that Defendants Hill and Narcisco confiscated and threw away Plaintiff's' criminal case documents and legal materials to prevent him from representing himself in his criminal case. (FAC 20–24.) These allegations can be construed as asserting a Sixth and Fourteenth Amendment violation of the right to self-representation. However, the FAC does not provide any details about the criminal action, including any factual allegations that would support that Plaintiff suffered the required "substantial prejudice." *See Brown*, 818 F. App'x. at 602 (holding that plaintiff's self-representation claim failed because plaintiff did not establish that incident at issue had any impact on his criminal case); *see also Trudeau v. Warden*, No. 1:13cv01691 LJO DLB PC, 2014 U.S. Dist. LEXIS 148138, at *7 (E.D. Cal. Oct. 17, 2014) ("Plaintiff alleges that he is a pro se defendant in a criminal case, though he does not provide any details about the criminal action or what stage the proceedings are in. It is therefore unclear, then, whether he sustained an 'actual injury' stemming from the alleged interference with his Sixth Amendment right to self-representation.") Furthermore, a self-

1    representation claim would imply the invalidity of Plaintiff's conviction, and

2    therefore would be barred under *Heck*, unless Plaintiff can demonstrate that his

3    conviction or sentence (if any) already has been invalidated.  *See, e.g., id.*

4    (dismissing Sixth Amendment self-representation claim in part because "once

5    convicted, [p]laintiff's claim is subject to dismissal pursuant to *Heck*"); *Way v.*

6    *Unknown Emp.*, No. 1:12cv00357 AWI DLB PC, 2013 U.S. Dist. LEXIS 27168

7    (E.D. Cal. Feb. 26, 2013) (dismissing plaintiff's Sixth Amendment self-

8    representation claim because he "cannot state a claim under section 1983 until his

9    conviction or sentence has been invalidated").

10       For these reasons, the FAC fails to state a Sixth Amendment self-

11   representation claim.  If this claim is included in any amended complaint, he must

12   correct these deficiencies and explain why *Heck* does not apply, or risk dismissal of

13   such claim.

14

15   **V.    CONCLUSION**

16       For the reasons stated above, the Court **DISMISSES** the FAC **WITH**

17   **LEAVE TO AMEND**.  Plaintiff may have another opportunity to amend and cure

18   the deficiencies given his *pro se* status.  Plaintiff is **ORDERED** to, within thirty

19   days after the date of this Order, either: (1) file a SAC, or (2) advise the Court that

20   Plaintiff does not intend to pursue this lawsuit further and will not file a SAC.

21       The SAC must cure the pleading defects discussed above and shall be

22   complete in itself without reference to the FAC.  *See* L.R. 15-2 ("Every amended

23   pleading filed as a matter of right or allowed by order of the Court shall be complete

24   including exhibits.  The amended pleading shall not refer to the prior, superseding

25   pleading.").  This means that Plaintiff must allege and plead any viable claims in the

26   SAC again.  Plaintiff shall not include new Defendants, new allegations, or new

27   claims that are not reasonably related to the claims asserted in the FAC.

28   ///

1    In any amended complaint, Plaintiff should confine his allegations to those

2  operative facts supporting each of his claims.  Plaintiff is advised that pursuant to

3  Rule 8, all that is required is a "short and plain statement of the claim showing that

4  the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the**

5  **standard civil rights complaint form when filing any amended complaint, a**

6  **copy of which is attached.**  In any amended complaint, Plaintiff should identify the

7  nature of each separate legal claim and make clear what specific factual allegations

8  support each of his separate claims.  **Plaintiff should clearly specify which claims**

9  **are being asserted against which specific Defendant.**  Plaintiff strongly is

10  encouraged to keep his statements concise and to omit irrelevant details.  It is not

11  necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at

12  this stage of the litigation.  Plaintiff also is advised to omit any claims for which he

13  lacks a sufficient factual basis.

14    **The Court explicitly cautions Plaintiff that failure to timely file a SAC, or**

15  **timely advise the Court that Plaintiff does not intend to file a SAC, will result in**

16  **a recommendation that this action be dismissed for failure to prosecute and/or**

17  **failure to comply with court orders pursuant to Federal Rule of Civil Procedure**

18  **41(b).**

19    Plaintiff is not required to file an amended complaint, especially since a

20  complaint dismissed for failure to state a claim without leave to amend may count as

21  a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary

22  dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  A Notice

23  of Dismissal form is attached for Plaintiff's convenience.

24    Plaintiff is advised that this Court's determination herein that the allegations

25  in the FAC are insufficient to state a particular claim should not be seen as

26  dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge

27  believes Plaintiff has failed to plead sufficient factual matter in the pleading,

28  accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not

required to omit any claim or Defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

DATED: October 29, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal